*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0278P (6th Cir.)
File Name: 01a0278p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

Nos. 00-5297/6048
TENNESSEE ASSOCIATION OF
HEALTH MAINTENANCE
ORGANIZATIONS, INC., et al.,
     *Intervenors-Appellants,*

v.

GAYNELL GRIER, et al.,
     *Intervenors-*
     *Plaintiffs-Appellees,*

FREDIA WADLEY,
Commissioner, Tennessee
Department of Health, et al.,
     *Defendants-Appellees.*

No. 00-5298
TENNESSEE ASSOCIATION OF
HEALTH MAINTENANCE
ORGANIZATIONS, INC., et al.,
     *Intervenors-Appellees,*
GAYNELL GRIER, et al.,
     *Intervenors-*
     *Plaintiffs-Appellees,*

Nos. 00-5297/
5298/6048/6150

FREDIA WADLEY,
Commissioner, Tennessee
Department of Health, et al.,
      *Defendants-Appellees,*

      *v.*

THA, An Association of
Hospitals and Health Systems;
HOSPITAL ALLIANCE OF
TENNESSEE; TENNESSEE
PHARMACISTS ASSOCIATION,
      *Intervenors-*
      *Defendants-Appellants.*

No. 00-6150
TENNESSEE ASSOCIATION OF
HEALTH MAINTENANCE
ORGANIZATIONS, INC., et al.,
      *Intervenors,*
THA, An Association of
Hospitals and Health Systems;
HOSPITAL ALLIANCE OF
TENNESSEE; TENNESSEE
PHARMACISTS ASSOCIATION,
      *Intervenors-Appellants,*

      *v.*

GAYNELL GRIER, et al.,
      *Plaintiffs-Appellees,*

## V.

For the reasons provided above, we **REMAND** this case to allow the district court to conduct a fairness hearing in a manner consistent with this opinion. The Revised Consent Decree shall remain in effect while the district court conducts the fairness hearing. This disposition renders unnecessary an examination of intervenors' various substantive challenges to the Revised Consent Decree.

forum for all interested parties to comment on the proposed decree."). However, the Supreme Court also warned that: "[i]t has never been supposed that one party--whether an original party, a party that was joined later, or an intervenor-- could preclude other parties from settling their own disputes and thereby withdrawing from litigation . . . [an intervenor] does not have the power to block the decree merely by withholding its consent." *Local No. 93, Int'l Ass'n of Firefighters*, at 528-29. Indeed, the Supreme Court in *Local 93* "did not create a broad right of intervenors to a quasi-trial, but rather simply required a district court conducting a fairness hearing to allow a party to a proposed settlement agreement to 'present evidence and have its objections heard.'" *United States v. City of Hialeah*, 140 F.3d 968, 989 n.12 (11th Cir. 1998) (quoting *Local No. 93, Int'l Ass'n of Firefighters*, 478 U.S at 529); *Edwards v. City of Houston*, 37 F.3d 1097, 1119 (5th Cir. 1994) ("Neither intervenors nor objectors are entitled to hold consent decrees hostage and require a full-blown trial in lieu of a fairness hearing."). Furthermore, the district court may limit the fairness hearing "to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *United States v. Oregon*, 913 F.2d 576, 582 (9th Cir. 1990) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

In sum, although intervenors are entitled to a fairness hearing on remand, we reject intervenors' suggestion at oral argument that the fairness hearing must entail the entire panoply of protections afforded by a full-blown trial on the merits. The principles articulated above belie such an approach. The fairness hearing is a forum for the intervenors to voice their objections; however, the district court has the discretion to limit the fairness hearing, and the consideration of those objections, so long as such limitations are consistent with the ultimate goal of determining whether the proposed settlement is fair, adequate and reasonable.

FREDIA WADLEY,
Commissioner, Tennessee
Department of Health, et al.,
        *Defendants-Appellees.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 79-03107—John T. Nixon, District Judge.

Argued: June 14, 2001

Decided and Filed: August 23, 2001

Before: JONES, DAUGHTREY, and COLE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Gary C. Shockley, BAKER, DONELSON, BEARMAN & CALDWELL, Nashville, Tennessee, for Tennessee Association of Health Maintenance Organizations, et al. Gordon Bonnyman, TENNESSEE JUSTICE CENTER, Nashville, Tennessee, Sue A. Sheldon, OFFICE OF THE ATTORNEY GENERAL, GENERAL CIVIL DIVISION, Nashville, Tennessee, for Appellees. **ON BRIEF:** Gary C. Shockley, John S. Hicks, BAKER, DONELSON, BEARMAN & CALDWELL, Nashville, Tennessee, for Tennessee Association of Health Maintenance Organizations, et al. Gordon Bonnyman, TENNESSEE JUSTICE CENTER, Nashville, Tennessee, Sue A. Sheldon, OFFICE OF THE ATTORNEY GENERAL, GENERAL CIVIL DIVISION, Nashville, Tennessee, Linda A. Ross, ASSISTANT ATTORNEY GENERAL, Nashville, Tennessee, for Appellees. William B. Hubbard, William M. Barrick, WEED, HUBBARD, BERRY & DOUGHTY, Nashville, Tennessee, for THA, et al.

---

### OPINION

---

NATHANIEL R. JONES, Circuit Judge**.** Intervenors-Appellants appeal the district court's entry of a revised consent decree governing the hearing and appeal procedures in Tennessee's Medicaid managed care program. The parties to the consent decree were the plaintiffs (the recipients of Medicaid in Tennessee) and the defendants, including the State of Tennessee. Appellants contend that since they were not parties to the consent decree, they can not be bound by it under the Due Process Clause of the Fourteenth Amendment. Appellants also argue that the district court failed to conduct a fairness hearing to determine the reasonableness of the consent decree. Finally, Appellants raise several substantive objections to the consent decree. For the reasons provided below, we **REMAND** this case to allow the district court to conduct a fairness hearing.

### I.

This case began in 1979 as a 42 U.S.C. § 1983 class action lawsuit. The original plaintiffs, who were present and future Medicaid recipients, alleged that Tennessee's Medicaid program violated requirements of both the Medicaid Act, 42 U.S.C. § 1396, et seq., and the Due Process Clause of the Fourteenth Amendment. Plaintiffs argued that defendants failed to provide them with adequate notice and procedural protection upon denial of claims submitted by their Medicaid providers.

In September 1992, the district court approved a Second Consent Decree, which the parties had negotiated to resolve their disputes. The Second Consent Decree required defendants to give Medicaid recipients written notice upon denial of either their requests for medical assistance pre-authorization or their providers' claims for reimbursement.

intervenors' notices of appeal to be filed as of the date on which they had filed their motion to intervene. In fact, it was the plaintiffs who filed a motion to reconsider asking the court to hold a hearing on the intervenors' motion to modify or set aside the Revised Consent Decree, which the court, apparently, never acted upon. The intervenors did have an opportunity to raise their objections to plaintiffs' motion to modify the Revised Consent Decree; however, the record squarely indicates that they were never provided a forum to present their arguments as to why the consent decree should be set aside.[3]

The Supreme Court has held that "an intervenor is entitled to present evidence and have its objections heard at [a] hearing[] on whether to approve a consent decree." *Local No. 93, Int'l Ass'n of Firefighters*, 478 U.S. at 529; *see also Willliams*, 720 F.2d at 921 ("The reasonableness hearing is a

---

[3]Plaintiffs also contend that the procedures outlined in *Williams* only apply in Title VII cases, or alternatively to cases involving discrimination and non-minority interests. Plaintiffs' argument is without merit for several reasons. First, plaintiffs overlook the fact that *Williams,* like the case at bar, was a Section 1983 case, not a Title VII case. Second, plaintiffs' assumption that *Williams* only applies to cases involving discrimination is contradicted by Sixth Circuit caselaw, which has consistently applied *Williams* to a broad range of cases . *See Alvarado v. Linsey*, No. 99-5159, 2000 WL 1182446 (6th Cir. Aug. 15, 2000) (applying *Williams'* fairness hearing requirement in the context of Section 1983 class action involving inverse condemnation and due process claims against the Airport Authority and City of Memphis for noise pollution) (unpublished); *People First of Tennessee v. Arlington Developmental Center*, No. 97-5732, 1998 WL 246146 (6th Cir. May 7, 1998) (citing *Williams'* fairness hearing requirement in the context of Section 1983 class action where plaintiffs claimed that they were being deprived of basic care and medical treatment in violation of substantive due process component of Fourteenth Amendment) (unpublished); *Webster v. Sowders,* No. 90-5236, 1991 WL 41551 (6th Cir. Mar. 26, 1991) (applying *Williams'* fairness hearing requirement in the context of class action involving claims by Kentucky prisoners that the presence of asbestos in prison dormitories constituted cruel and unusual punishment and deprived the plaintiffs of liberty without due process of law) (unpublished).

to those affected, adequate and reasonable. 720 F.2d 909, 920-21 (6th Cir. 1983).

First, intervenors argue that entry of the consent decree was error because the district court failed to give "notice of the proposed compromise to all members of the class" as required by Fed. R. Civ. P. 23(e). However, intervenors lack standing to assert this claim under Rule 23(e). Fed. R. Civ. P. 23(e) requires that "notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs." The plain language of the Rule 23(e) clearly contemplates allowing only class members to object to a lack of notice. *See Gould v. Alleco, Inc.*, 883 F.2d 281, 283 (4th Cir. 1989). Thus, under Rule 23(e), non-class members have no standing to object to a lack of notice. *Id.* Since the intervenors are non-class members, they have no standing to object to the alleged lack of notice given to class members pursuant to Rule 23(e).

Next, intervenors argue that the district court's failure to conduct a fairness hearing as required by the Sixth Circuit's decision in *Williams*, 720 F.2d at 921, was an abuse of discretion. Specifically, intervenors contend that they were denied the opportunity to object to various provisions of the Revised Consent Decree.

The record reflects that the district court failed to conduct a hearing to determine the fairness of the consent decree to those affected. Indeed, plaintiffs concede that the "the proceedings below were not formally denominated a fairness hearing and did not purport to follow the sequence suggested in *Williams*" (Plaintiffs' Br. at 25.) Instead, plaintiffs argue that intervenors had ample opportunity to present their arguments as to why the consent decree should be set aside. However, the record refutes plaintiffs' argument. Although the intervenors included in their motion to intervene a lengthy critique of the consent decree, the district court did not address the intervenors' substantive arguments to set aside the decree. Rather, the district court simply ordered the

It also required defendants to provide recipients, upon request, with administrative hearings to review such denials.

In January 1994, Tennessee converted its traditional Medicaid fee-for-service program to a managed care model, and expanded the scope of eligibility. The new program, known as TennCare, operates as a special demonstration project authorized by the Secretary of Health and Human Services under the waiver authority conferred on him by Section 1115 of the Social Security Act, 42 U.S.C. § 1315. Under TennCare, the state no longer directly purchases medical services for eligible individuals as it did in the former Medicaid fee-for-service program. Instead, TennCare contracts with private managed care contractors ("MCCs"),[1] which control beneficiaries' access to covered services. From TennCare's inception, the MCCs were required by their contracts to comply with federal notice and hearing requirements of 42 C.F.R. § 431, Subpart E. Pursuant to its contract with the State, the MCCs agreed that the state could "develop additional grievance process guidelines or rules, which shall be followed by the [MCC], if TennCare determines that it is in the best interest of the TennCare program or if necessary to comply with federal or judicial requirements." (J.A. at 897.)

In April 1995, the current plaintiffs, who are TennCare enrollees, filed a motion to amend the Second Consent Decree alleging that the TennCare program was being administered in a manner inconsistent with the Decree. Specifically, the

---

[1]The state contracts with three types of MCCs. Managed care organizations ("MCOs"), variously referred to as health maintenance organizations ("HMOs"), administer medical benefits. Behavioral health organizations administer mental health and addiction treatment. Pharmacy benefits managers ("PBMs") administer prescription drug benefits. All three types of entities are prepaid fixed monthly premiums for the beneficiaries who are assigned to them by the state. In return, they maintain networks of health care providers as subcontractors to treat those beneficiaries. The MCCs review and control the enrollees' access to TennCare services.

plaintiffs argued that a modification was needed to "prevent the denial, delay, reduction, suspension, or termination of medical assistance or other adverse action without due process and a timely fair hearing decision in violation of Title XIX of the Social Security Act." (J.A. at 99.) Defendants acknowledged that the Decree had to be modified, but disagreed with plaintiffs' proposed modifications.

In May 1996, the district court held that the state's TennCare notice and hearing procedures violated Medicaid law and regulations, as well as the Due Process Clause of the Fourteenth Amendment. *See Daniels v. Wadley*, 926 F.Supp 1305, 1313 (M.D. Tenn. 1996). The district court ordered the defendants to submit proposed modifications to the Consent Decree within 90 days. *Id* at 1314.[2] In August 1996, the district court entered an agreed order in which the parties negotiated the policies and procedures through which the federal Medicaid due process requirements would be implemented in the context of the new managed care program. That agreed order incorporated the terms of the 1992 consent decree which applied to the State defendants as well as to their "agents, employees, and representatives . . . ." (J.A. at 67.)

On March 11, 1999, plaintiffs filed a Motion to Hold State Defendants in Contempt for violation of the Second Consent Decree as modified by the agreed order. Six months of intensive discovery ensued, culminating on the eve of trial, with the defendants request for a court-supervised settlement conference. That conference produced the Revised Consent Decree Governing TennCare Appeals, which was approved

---

[2] The defendants subsequently appealed to the Sixth Circuit and asked only that the Court strike the portion of the trial court's ruling that found the MCOs to be state actors. The Sixth Circuit vacated the "state actor" finding without reaching the merits, ruling on the basis that the finding was unnecessary to the trial court's grant of relief. *See Daniels v. Menke*, No. 96-5887, 1998 WL 211763, at *2 (6th Cir. Apr. 22, 1998) (unpublished opinion).

*agents*, servants, employees . . . ." FED R. CIV P. 65(d) (emphasis added). "This is derived from the common law doctrine that a decree of injunction not only binds the parties but also those identified with them in 'privity' with them, represented by them or subject to their control." *See Regal Knitwear Co. v. National Labor Relations Board*, 324 U.S. 9, 14 (1945); *see also Henderson v. Ford*, 488 S.W.2d 720, 722 (Tenn. 1972) (defining agency as the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf, and subject to his control, and consent by the other to so act). In the case at bar, it is clear that the intervenors are subject to the control of the State insofar as they are contracturally bound to follow whatever appeals and grievance procedures the State deems appropriate. Moreover, the intervenors are acting on behalf of the State, since the State, by statute, is the "single State agency" responsible for administration of the TennCare program. 42 U.S.C. § 1396a (a)(5). Accordingly, the intervenors are agents of the State and are bound by the consent decree to which the state was a party.

In sum, the entry of the Revised Consent Decree against the intervenors is consistent with the Due Process Clause of the Fourteenth Amendment as well as Fed. R. Civ. P. 65(d).

## IV.

Intervenors raise several objections to the manner in which the district court approved the consent decree. According to Rule 23 of the Federal Rules of Civil Procedure, court approval is required to settle a class action. FED. R. CIV. P. 23(e). In *Williams v. Vukovich*, the Sixth Circuit articulated the procedure which courts must follow in order to approve a class action settlement: (1) the court must preliminarily approve the proposed settlement, i.e., the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair

not present as parties to the litigation may be bound by the judgment where they are in fact adequately represented by parties who are present . . . *or where for any other reason the relationship between the parties present and those who are absent is such as legally to entitle the former to stand in judgment for the latter.*" 311 U.S. at 42-43 (emphasis added). Indeed, the relationship of a nonparty to those participating in the litigation can result in the nonparty being bound by the result of the litigation. *See Tourangeau v. Uniroyal, Inc.,* 101 F.3d 300, 305 (2d Cir. 1996). Specifically, "[a] person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement." *Id.* at 307 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 40 (1980)); *see also Local Number 93 Int'l Ass'n of Firefighters,* 478 U.S. at 529 (holding that a party may not impose duties or obligations on a third party without that party's agreement).

Applying these principles to the case at bar, it is clear that the intervenors, through their contract with the State of Tennessee, agreed to be bound by the Revised Consent Decree Governing TennCare Appeals. Section 2-9 (a)(13) of the Contractor Risk Agreement between the State and all participating HMOs provides that "TENNCARE may develop additional appeal process guidelines or rules which *shall be followed* by the CONTACTOR, if TENNCARE determines that it is in the best interest of the Tenncare Program or if necessary to comply with federal or judicial requirements." (J.A. at 1061.) (emphasis added). Furthermore, the Contractor Risk Agreement provides that the providers must also comply with the grievance process. Thus, intervenors are bound by the additional appeal process and grievance guidelines contained in the Revised Consent Decree by virtue of their contractural obligations to the State.

The entry of the Revised Consent Decree against the intervenors is also consistent with Fed. R. Civ. P. 65(d). Rule 65(d) provides that "[e]very order granting an injunction . . . is binding only upon the parties to the action, their officers,

by the court and entered on October 26, 1999. Section A of the decree provided that:

> This order and previous orders incorporated by reference shall apply fully to the state defendants, their agents, servants, employees, and attorneys, and those persons in active concert or participation with them including any private or public entity that administers Medicaid-funded health benefits. These orders shall apply specifically, but not limited to, the state defendants and their managed care contractors (MCC) . . . .

(J.A. at 308.) The decree enjoined the defendants to adequately protect the due process rights of plaintiff class members in the context of managed care by complying with provisions of the decree which expanded the protections afforded by 42 C.F.R. § 431, Subpart E.

On November 24, 1999, six TennCare MCOs and their trade association, the Tennessee Association of Health Maintenance Organizations ("MCO Intervenors") moved to intervene for the purpose of challenging the Revised Consent Decree. On November 29, 1999, three other trade associations ("Provider Intervenors") filed a joint motion to intervene on behalf of hospitals and pharmacists. Both MCO Intervenors and Provider Intervenors filed motions for relief from the Revised Consent Decree arguing that the decree inappropriately relies on the hearing rights set forth in 42 C.F.R. § 431, Subpart E. Affidavit testimony filed in support of the intervenors' motions complained that the effect of the decree was to impose new requirements that they provide notice and services pending appeal.

On February 25, 2000, the district court granted intervenors' motions to intervene. The court noted that "[d]efendants and [p]laintiffs in this case rebuffed [p]roposed [i]ntervenors' attempts to be present when the terms of the Revised Consent Decree were negotiated and drafted" and that the existing parties would not be prejudiced by

intervention. (J.A. at 990.) The district court also found that the intervenors' ability to protect their interests would be impaired if they were not allowed to intervene because the denial of intervention would preclude all appellate review of the Revised Consent Decree. The district court did not address the intervenors' substantive arguments to set aside the consent decree. Rather, the court ordered the intervenors' notices of appeal be filed *nunc pro tunc* as of the dates on which they had filed their motions to intervene.

On March 2, 2000, plaintiffs filed a Motion to Reconsider for the Purpose of Affording the Parties an Opportunity to Supplement the Record. Plaintiffs requested that instead of immediately ordering the intervenors to proceed with their appeals, the district court should hold a hearing on the interevenors' motion to modify or set aside the Revised Consent Decree Governing TennCare Appeals. On March 16, 2000, plaintiff also filed a Motion for Relief from Judgment pursuant to Fed. R. Civ. P. 60, to modify the Revised Consent Decree. Specifically, the plaintiffs requested that the court make certain changes necessary to correct technical errors and to clarify terms.

On March 17, 2000, the district court, after a hearing on plaintiffs' Motion for Relief from Judgment, ordered the intervenors to respond to plaintiffs' revisions to the Revised Consent Decree within 10 business days. On April 14, 2000, intervenors filed their response to plaintiffs' Motion for Relief from Judgment objecting to the "grossly unbalanced appeals rules," and specifically the "plainly unconstitutional prohibition on intervention in administrative appeals." (J.A. at 1227.)

On May 10, 2000, the district court adopted the plaintiffs' proposed changes to the Revised Consent Decree. However, on May 24, 2000, the district court vacated its May 10th order concluding that it lacked jurisdiction to allow modifications to the Revised Consent Decree since a notice of appeal had already been filed. The plaintiffs and the defendants jointly

moved this court for a limited remand to permit the district court to grant a Fed. R. Civ. P. 60(b) motion to modify the Revised Consent Decree. The Sixth Circuit granted the joint motion and remanded to the district court for the limited purpose of ruling on plaintiffs' Rule 60(b) motion to modify. *See Tennessee Association of Health Maintenance Organizations, Inc. v. Grier,* No. 00-5297 (6th Cir. June 26, 2000) (unpublished order); J.A. at 1251.

On July 31, 2000, the district court found that the Revised Consent Decree should be modified to correct technical errors, clarify its terms and allow more time for its implementation in accordance with plaintiffs' motion to modify the consent decree. On August 3, 2000, the intervenors filed their Notice of Appeal.

## II.

The district court's approval of a consent decree is reviewed for abuse of discretion. *See Local 93, Int'l Ass'n of Firefighters v. Cleveland,* 478 U.S. 501, 526 (1986); *Lorain NAACP v. Lorain Bd. of Educ.,* 979 F.2d 1141, 1147-48 (6th Cir. 1992); *United States v. City of Alexandria,* 614 F.2d 1358, 1361 (5th Cir.1980) (holding that an abuse of discretion standard generally applies to appellate review of judicial approvals of consent decrees).

## III.

Intervenors-Appellants contend that the district court's entry of the consent decree violates their constitutional right to due process under the Fourteenth Amendment. Specifically, Appellants, relying on the Supreme Court's decision in *Hansberry v. Lee,* 311 U.S. 32 (1940), argue that since they were not parties to the consent decree, they can not be bound by it under the Due Process Clause of the Fourteenth Amendment. We disagree.

In *Hansberry v. Lee,* the Supreme Court stated that consistent with the Due Process Clause, "members of a class