NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3558
_____

CATHLEEN MCDONOUGH;
NEW JERSEY PSYCHOLOGICAL ASSOCIATION;
BARRY HELFMANN, PSY.D.

v.

HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY

LINDA A. ESSIG; SUZANNE FEIN; SUSAN HAGY PIZZI;
JENNIFER SCHEER; ROBERT HAGER, P.A.-C.,
                                                      Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-09-cv-00571)
District Judge:  Hon. Stanley R. Chesler
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 17, 2015

Before:  FISHER, CHAGARES, and JORDAN, *Circuit Judges*.

(Filed: September 23, 2015)
_____

OPINION*
_____

_____

    * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

This is an appeal in which six objectors ("the objectors") from a class of approximately 2.8 million ask us to reverse an order of the United States District Court for the District of New Jersey granting final approval of a class action settlement under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. Because the objectors' arguments are without merit, we will affirm.

## I.     BACKGROUND

This case stems from two putative class action lawsuits filed in 2009 and 2010 in which Horizon Blue Cross Blue Shield of New Jersey ("Horizon") subscribers and providers claimed that Horizon's use of two flawed databases – Ingenix and Top of Range (or "TOR") – caused it to systematically underpay both subscribers and providers for out-of-network healthcare services. The two cases were consolidated before the District Court and the parties actively litigated them for several years, engaging in extensive motions practice and voluminous fact and expert discovery.

In January 2013, the District Court judge presiding over the consolidated case denied class certification in a separate but similar case, *Franco v. Conn. Gen. Life Ins. Co.*, 289 F.R.D. 121 (D.N.J. 2013), and he rejected the same type of damages model used by the putative class members in this consolidated action, *id.* at 137-40.[1] That ruling understandably prompted the parties to intensify settlement efforts, even though there were a number of pending motions at the time, with the putative class having moved for

_____

[1] The District Court also granted summary judgment in favor of defendants in that case. *Franco v. Conn. Gen. Life Ins. Co.*, No. CIV.A. 07-6039 SRC, 2014 WL 2861428 (D.N.J. June 24, 2014).

certification and Horizon having filed both summary judgment and *Daubert* motions. In June 2013, Horizon and the plaintiffs advised the District Court that they had agreed to settle the class action and, on December 3, 2013, they jointly filed a motion for preliminary approval of the settlement. The District Court granted the motion and ordered that objections and opt-outs be filed by March 3, 2014 (which was later extended to March 7, 2014). In January, 2014, approximately 2.7 million of the 2.8 million class members received the court-approved notice, which scheduled a final approval hearing for April 1, 2014.

On February 28, 2014, the six objectors filed their objections to the settlement. The plaintiffs and Horizon nevertheless submitted their joint motion for final approval of the settlement and supporting papers, including plaintiffs' fee requests. Class counsel had sought and received an extension of time in which to file those documents, causing the date to change to later in March 2014. The objectors advised that they did not object to that extension, but sought a continuance of the hearing to accommodate the prepaid European vacation of Eric Katz, lead counsel for the objectors. Mr. Katz indicated that it would be problematic for anyone else from his office to represent the objectors or for him to participate by telephone. After the District Court refused to move the hearing date, a partner and an associate from Katz's firm ultimately attended the hearing to represent the objectors.[2]

---

[2] Katz also asked for permission to file a supplement to the previously filed objections, which the District Court evidently granted. (*Cf.* App. at 1488 ("The Court: Now, Mr. Katz, I haven't received any additional submissions from you. Correct?").)

At about the same time the objectors' counsel was seeking a continuance, Horizon discovered that certain members of the provider subclass did not receive direct mail notice and advised the District Court of that issue. The Court convened the final approval hearing on April 1, 2014 as scheduled. At the hearing, counsel for the objectors argued and were questioned extensively by the Court. The Court then ordered the parties to provide notice to the members of the provider subclass who did not previously receive it. The Court also indicated that it would reconvene the final approval hearing on June 23, 2014.

The second installment of the final fairness hearing went forward on schedule. Mr. Katz appeared at the hearing to "amplify one point with regard to the fairness of the settlement, and also to address [the *Franco* decision]." (App. at 1488.) The District Court questioned why Katz did not file any written submissions discussing those issues, but nonetheless allowed him to present argument. When Katz's argument concluded, the Court noted that he did not advance anything new or responsive to the final motions for approval, but merely "rehash[ed] … what was presented by [his] colleague" at the initial fairness hearing. (App. at 1492.)

On July 9, 2014, the District Court issued an order and opinion, later amended on July 24, 2014, certifying the class, appointing class counsel, approving the settlement, awarding fees, and denying the objectors' motions. The objectors timely appealed.

4

## II.  DISCUSSION[3]

On appeal, the objectors raise four challenges to the District Court's approval of the settlement: first, an unpreserved argument that the current legal standards for assessing the fairness of a class action settlement under Federal Rule of Civil Procedure 23(e) should be modified when the settlement consists solely of non-pecuniary benefits; second, an unpreserved claim that the manner in which the District Court conducted the fairness hearing denied procedural due process to the objectors; third, the assertion that the District Court erred in approving the settlement because it did not provide any real or substantial benefit to the class; and fourth, an argument that the District Court denied procedural fairness to the objectors because it refused to continue the fairness hearing involving 2.8 million class members to accommodate Mr. Katz's European vacation. We address each argument in turn.

### A.  UNPRESERVED CLAIMS

It is axiomatic that issues raised for the first time on appeal will generally not be considered absent exceptional circumstances. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 261 (3d Cir. 2009). Particularly when complex legal issues are presented, a reasonably detailed exposition of an argument in the district court is required to preserve

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132 and we have jurisdiction pursuant to 28 U.S.C. § 1291. The objectors argue that we should review the District Court's approval of a class action settlement *de novo* because the challenges they advance – many of which were not made below and thus are unpreserved – involve requests that we fashion new legal standards. Under established law, however, we review a District Court's approval of a class action settlement for an abuse of discretion. *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 298 (3d Cir. 2005).

the issue for appeal. *Frank v. Colt Indus., Inc.*, 910 F.2d 90, 100 (3d Cir. 1990). Here, the objectors ask us to adopt an entirely new standard for approving non-pecuniary class action settlements and also ask us to direct district courts to follow a specific briefing schedule when entertaining such settlements. Contrary to the objectors' protestations that they raised these issues below and that the District Court ruled on them "sub silentio" by approving the settlement (Opening Br. at 2-3), it is clear from the record that these issues were not raised, even obliquely, before the District Court.[4] Accordingly, because the claims were not preserved and because no extraordinary circumstances exist to warrant our review of those claims, we will not consider them now.

**B.** **REAL OR SUBSTANTIAL BENEFIT OF THE SETTLEMENT**

In considering an application for approval of a class action settlement, a district court must assess whether the proposed settlement is "fair, reasonable, and adequate."

---

[4] For example, the objectors claim that, in arguing that the settlement offered no benefit to the class members and in asking for "further investigation" or discovery to "develop a record in support of their contentions," they were actually arguing that the standards we articulated in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), and *In re Prudential Insurance Co. of America Sales Practices Litigation*, 148 F.3d 283 (3d Cir. 1998), for determining the fairness of a class action settlement were inadequate to address the unique realities of a non-pecuniary settlement. That is obviously incorrect and the objectors concede as much. (*Cf.* Reply Br. at 19 ("Nor were Objectors required to request the district court deviate from the current standard established by the Third Circuit in order to preserve the issue for appeal, as that is beyond the authority of a district court … .").) The objectors also argue that they preserved the contention that we should adopt a formalized briefing schedule similar to that used in other circuits when they requested – and received – permission to file a supplemental objection after the final motion for approval was filed. That is also incorrect, and the argument ignores the reality that the objectors had received all of the settlement approval papers prior to the final fairness hearings and had an opportunity to file a supplemental response to the approval papers, which they chose not to do. Accordingly, even if the argument were not waived, which it has been, the objectors cannot now be heard to complain about the lack of an opportunity that they in fact had.

Fed. R. Civ. P. 23(e)(2); *accord Ehrheart v. Verizon Wireless*, 609 F.3d 590, 592 (3d Cir. 2010). "[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). Thus, when evaluating a settlement, a court should be "hesitant to undo an agreement that has resolved a hard-fought, multi-year litigation." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 (3d Cir. 2013).

When evaluating such a settlement, a court must consider the factors set forth in *Girsh v. Jepson*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 157 (3d Cir. 1975) (internal quotation marks and ellipses omitted).

The objectors do not argue that the District Court's thorough discussion of the *Girsh* factors was flawed. Instead, they complain that the District Court erred in approving the settlement because the settlement did not offer a real or substantial benefit to the class. Specifically, they argue that the settlement required the class to relinquish $10 billion in claims in order to receive exclusively non-pecuniary relief – the discontinuation of Ingenix and TOR – which it claims it would have received anyway, as Horizon was planning on discontinuing those databases regardless of the outcome of the litigation. We disagree.

7

First, as the District Court noted, the $10 billion damages calculation comes from the plaintiffs' expert report, which, at the time of settlement, was the subject of a *Daubert* challenge, and was calculated using a model that the District Court had rejected in a similar case. Placed in that context, the likelihood of the plaintiffs actually recovering any portion of that damages calculation was dubious. Second, as the District Court rightly noted, a settlement can be fair without involving pecuniary relief. *Cf. Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) ("[N]onpecuniary benefits to the corporation may support a settlement. …").[5] Indeed, Rule 23(b)(2) contemplates injunctive relief. Further, the objectors' claim that Horizon would have discontinued using Ingenix anyway is speculative.[6] And, the objectors ignore that the settlement also secured an end to the use of TOR and gained various transparency reforms sought by the class, including updates and revisions to Horizon plan language, member handbooks, and marketing materials.

---

[5] *See also Zimmerman v. Bell*, 800 F.2d 386, 391 (4th Cir. 1986) (nonmonetary derivative settlement relief adequate when it provided guidelines for "future management responses to tender offers and takeover bids"); *Maher v. Zapata Corp.*, 714 F.2d 436, 466 (5th Cir. 1983) (nonmonetary relief adequate settlement relief); *cf. Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970) (nonmonetary recovery on merits does not preclude award of fees).

[6] Specifically, the objectors point to the following as evidence that Ingenix's days were numbered, notwithstanding the settlement at issue here: (1) that the New York Attorney General settled a lawsuit in New York state, one of the terms of which was that Ingenix would no longer be used there; (2) that, after settlement was reached here, Horizon's newsletter announced the end of Ingenix; and (3) that, again, after settlement was reached here, regulatory entities in New Jersey proposed ending Ingenix's use.

Insofar as the objectors complain that discontinuing Ingenix and TOR may not necessarily benefit the class because some members may actually receive lower payments with a more accurate system, their argument is perplexing. Horizon subscribers are entitled to an accurate reimbursement that comports with the terms of their benefit plans, not a windfall that could result from overcompensation by using a flawed database. It is evident that the objectors have not shown any errors in the District Court's approval of the settlement – a settlement which, particularly in light of the considerable risk of failure to the plaintiffs, is fair, reasonable, and adequate.

### C. PROCEDURAL FAIRNESS[7]

An objector is entitled to participate effectively in the settlement hearing and to have an adequate opportunity to evaluate the strength of a proposed settlement. *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 316 (3d Cir. 2005). Whether an objector was denied procedural fairness in his or her effort to challenge the adequacy of a settlement is judged based on the totality of the circumstances surrounding the settlement hearing. *Girsh*, 521 F.2d at 157. Here, the objectors raise the strained argument that they were denied procedural fairness in voicing their objections to the proposed settlement because the District Court refused to continue the final fairness hearing to accommodate Mr. Katz's vacation schedule. They further complain that they were not allowed additional discovery into whether the settlement's nonmonetary benefits offered a real and substantial benefit to the class.

---

[7] Insofar as the objectors' procedural fairness claim is rooted in their objection to the briefing schedule, we reject it for the reasons described in note 4, *supra*.

9

First, the District Court's determination to not let a vacation dictate the schedule produced no legitimate basis for complaint. The six objectors from a class of 2.8 million were not entitled to compel the District Court to reschedule the hearing. The District Court proposed having Katz attend the hearing by phone (which he rejected due to the time difference) and suggested having someone else from Katz's office attend the hearing (which is what ultimately happened), but Katz believed that his "personal appearance would enhance the process." (App. at 789.) Two attorneys from Katz's firm attended the hearing and participated fully. Further, because the hearing was continued due to issues with notice to the class, Katz actually did attend the second installment of the fairness hearing and had an opportunity to present further argument, even though the District Court evaluated his argument as simply a "rehash" of what his colleagues had ably conveyed to the Court during the first installment. (App. at 1492.) The objectors were heard through counsel in both their papers and at two sessions of the final fairness hearing. It thus cannot be said that they were denied procedural fairness. *Cf. Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1558 (3d Cir. 1994) ("[T]he objecting class members must be given an opportunity to address the court as to the reasons the proposed settlement is unfair or inadequate.").

The objectors have also failed to demonstrate that they were entitled to additional discovery. A district court has wide latitude to "employ the procedures that it perceives will best permit it to evaluate the fairness of the settlement." *In re Cmty. Bank of N. Va.*, 418 F.3d at 316 (internal quotation marks omitted). It need not endow objecting class members with "the entire panoply of protections afforded by a full-blown trial on the

10

merits." *Tenn. Ass'n of Health Maint. Orgs. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001). Discovery is generally in order only if objectors can make a colorable claim that the settlement should not be approved. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 635 (6th Cir. 2007). Although, in *Girsh* we found that an objector was "entitled to at least a reasonable opportunity to discovery" against the plaintiffs and defendants, 521 F.2d at 157, "that finding was predicated on the total inadequacy of the record upon which the settlement was approved and the totality of the circumstances surrounding the settlement hearing in which the objector was denied meaningful participation." *In re Cmty. Bank of N. Va.*, 418 F.3d at 316 (internal quotation marks omitted).

Unlike in *Girsh*, there was no demonstrated need for additional discovery here. This case was litigated for approximately five years, and some million pages of discovery passed between the parties. The objectors' demand for additional discovery is not linked to any identified issue with the settlement, nor have the objectors articulated any fact they might hope to uncover. Their discovery demand is a thinly-veiled attempt to unearth some as yet unidentified problem that might, in some way, lead to a different settlement in which the objectors receive a payout. That is not enough to warrant discovery. *Cf. In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 325 (3d Cir. 1998) (holding the district court acted well within its discretion in denying an objector's request for discovery where the objector was able to present his arguments to the court during the fairness hearing and where the court found the objector "had ample opportunity to avail himself of the substantial discovery provided to Lead Counsel but failed to do so, and that

11

additional discovery was unnecessary because [the objector] focused primarily on legal issues"). The District Court did not err in concluding that the objectors had failed to make the requisite showing that further discovery was warranted.

**III.   CONCLUSION**

For the forgoing reasons, we will affirm the ruling of the District Court.