883 F.2d 281
 Fed. Sec. L. Rep. P 94,851, 14 Fed.R.Serv.3d 549
 David P. GOULD; Marks, Inc.; Lawrence I. Weisman, Philip
Doccolo; Rocko, Inc.; Patrick L. Day, Trustee
for James M. Weisman, Plaintiffs-Appellants,
v.
ALLECO, INC.; Morton M. Lapides; Henry Weitz; Edward A.
Weisman; Harry J. Conn; David H. Cohen; Robert H. Heller;
William D. Houser; Frederic K. Raiff; Arthur F. Staley;
David C. Barr; John E. Baker; Jeffrey R. Lapides; Heather
A. Ditto; Jayme Dorf; Mark A. Garfinkle; David S. Klein;
Donn A. Lewis; Jeffrey E. Mann; J. Tighe Merkert; Joan L.
Nickel; Frank E. Silvestro; Norman B. Weisman; Deborah A.
Wenner; C.J. Nelson; Harry J. Kane; Pamela Lapides;
Smith Barney, Harris Upham & Company; Peat, Marwick,
Mitchell & Company, Now--Peat, Marwick, Main & Company;
Laventhol & Worwath; American Security Bank; Perpetual
Savings Bank; Squire, Sanders and Dempsey; Marshall M.
Meyer, Defendants--Appellees.
Appeal of Lawrence I. WEISMAN; David P. Gould; Marks,
Inc.; Philip Doccolo; Rocko, Inc.; Patrick L.
Day, Trustee for James M. Weisman.
Leonard ROBINSON; Patricia Robinson, Plaintiffs--Appellees,
v.
ALLEGHENY BEVERAGE CORPORATION; Morton M. Lapides; Henry
Weitz; Marshall M. Meyer; Edward A. Weisman;
Harry J. Conn, Defendants--Appellees.
 Nos. 88-3637, 88-3638.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 13, 1989.
Decided Aug. 16, 1989.
Rehearing and Rehearing In Banc Denied Sept. 8, 1989.
 
 David Reed Burton for plaintiffs-appellants.
 Bruce K. Cohen (Meredith & Cohen, P.C., on brief), Stephen Howard Glickman (Leslie A. Blackmon, Auckerman, Spaeder, Goldstein, Taylor & Kolker; A. Raymond Randolph, Daniel I. Prywes, Pepper, Hamilton & Scheetz; Steven A. Allen, Davis, Weikel & Allen, on brief) for defendants-appellees.
 Before ERVIN, Chief Judge, and HALL and WILKINSON, Circuit Judges.
 K.K. HALL, Circuit Judge:
 
 
 1
 Lawrence I. Weisman and two others appeal from the denial of a motion to intervene in Robinson v. Allegheny Beverage Corporation, CA No. S-88-2399 (D.Md.) and from the order approving a class settlement of the same case. Weisman also appeals from the district court's refusal to address his objections to the settlement proposal. The district court determined that the motion to intervene in the class action was not timely filed and that the appellants lacked standing to object to the proposed class settlement or to intervene in the action itself. Finding that the district court correctly decided each of these issues, we affirm.
 
 I.
 
 2
 In July, 1986, Allegheny Beverage Corporation was sued by Robinson and six other persons who had purchased Allegheny stock during a prior thirteen-month period. The complaint claimed violations of federal securities laws and state common law for alleged fraud by the company's officers in inflating the stock's price. Robinson was consolidated with two other similar actions, and almost two years of litigation culminated in a proposed "Stipulation of Settlement" which was presented to the district court on May 17, 1988. This proposal contemplated payment of $6.95 million to the plaintiff class. The court preliminarily approved the settlement, certified the class for settlement purposes, scheduled a hearing for September 6, 1988, to consider the fairness of the proposal, and set August 1, 1988, as the deadline for the filing of objections by class members to the proposal. Notice of the settlement was mailed to each member of the class and was published in the Wall Street Journal.
 
 
 3
 No class members objected to the settlement but Weisman, an Allegheny bondholder, filed an "opposition" on August 1 on behalf of all owners of bonds issued by the company. The crux of Weisman's objection was that bondholders, whose rights to payment he alleged to be superior to the rights of stockholders, would be harmed because the Robinson settlement would dilute the conversion value of the bonds by depleting the company's assets. The company and the named plaintiffs filed responses to the objection; Weisman, however, failed to reply although given the opportunity to do so.
 
 
 4
 On August 15, 1988, Weisman and five others filed a complaint in the district court against the company and thirty-three other defendants claiming, among other things, $200 million in compensatory damages and $500 million in punitive damages for alleged violations of federal securities law. Gould v. Alleco, Inc.,[1] C/A No. B88-2399 (D.Md.). On August 24, the district court notified all parties in both cases that any requests for injunctive relief in the Robinson case would be entertained at the September 6 settlement hearing.
 
 
 5
 On September 2, the Gould plaintiffs filed a 155-page amended complaint which included a request to enjoin the Robinson settlement. The basis of the request was the Gould plaintiffs' contention that payment of the settlement would impair the company's ability to satisfy any judgment which might be rendered against it in Gould.
 
 
 6
 Moments before the commencement of the September 6 hearing, counsel for the Robinson parties were served with copies of the amended Gould complaint and with a motion by Weisman and two other Gould plaintiffs to intervene in the Robinson case and to delay the approval of the settlement. After extended argument, the district court denied the motion to intervene on the grounds that it was untimely under Fed.R.Civ.P. 24(b) and, alternatively, that the would-be intervenors lacked standing. The court disposed of Weisman's August 1 objection to the settlement on the grounds that Weisman was not a member of the class and, therefore, had no standing to object. The court then approved the settlement and noted that such action mooted any claims for injunctive relief against approval sought by the Gould plaintiffs[2].
 
 
 7
 This appeal followed.II.
 
 
 8
 On appeal, the appellants contend that the lower court erred in ignoring Weisman's objections to the settlement proposal and in denying the motion to intervene on standing and timeliness grounds. Weisman and the other intervenor-appellants also address the merits of the settlement proposal. Because our resolution of the intervention/objection issues is completely dispositive, however, we do not reach the issue of the propriety vel non of the settlement itself.
 
 
 9
 The lower court held that Weisman had no standing to intervene or to object. Although both the August 1 objection and the intervention motion had identical purposes, i.e. to delay or halt the Robinson settlement, resolution of each requires a slightly different analysis. We begin with a discussion of the August 1, 1988, "opposition" or objection filed by Weisman on behalf of himself and other bondholders.
 
 A.
 
 10
 Fed.R.Civ.P. 23(e) requires that notice of any proposed settlement of a class action be given to "all members of the class in such manner as the court directs." No one argues that the manner of notice was deficient in any respect; Weisman, however, contends that his August 1, 1988, "opposition" to the settlement should have required the court to reach the merits of his objection. We disagree. The plain language of Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals. Kusner v. First Penn Corp., 74 F.R.D. 606, 610 n. 3 (E.D.Pa.1977), aff'd 577 F.2d 726 (3rd Cir.1978); Jenson v. Continental Financial Corp., 591 F.2d 477, 482 n. 7 (8th Cir.1979). Beginning from the unassailable premise that settlements are to be encouraged, it follows that to routinely allow non-class members to inject their concerns via objection at the settlement stage would tend to frustrate this goal. Were the rule as Weisman contends, every objection from a non-class member would trigger an examination by the court of the effects of the proposal on the objector. Kusner, at 611. We cannot conceive that the drafters of the Rules intended to permit such eleventh-hour expansion of class actions. We hold, therefore, that non-class members have no standing to object, pursuant to a Rule 23(e) notice directed to class members, to a proposed class settlement. Interjection of the opposing views of non-class members should proceed via intervention under Rule 24.[3] We proceed, then, to a discussion of the motion by the Weisman intervenors.
 
 B.
 
 11
 Rule 24(a)(2), "Intervention of Right," requires the court to allow intervention when, upon timely application,
 
 
 12
 ... the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest unless the applicant's interest is adequately represented by existing parties.
 
 
 13
 Thus, in addition to timeliness, intervention of right is dependent on the moving party's fulfillment of three requirements: interest, impairment of interest and inadequate representation. 3B J. Moore, Moore's Federal Practice, 24.07(1) (2d ed. 1987); United Guar. Res. Ins. Co. v. Philadelphia Sav. Fund, 819 F.2d 473, 474 (4th Cir.1987). The district court's denial of the intervention motion for failure to meet these requirements will only be disturbed if an abuse of discretion is found. Virginia v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir.1976); Aluminum Co. v. Utilities Comm. of State of N.C., 713 F.2d 1024, 1025, n. 1 (4th Cir.1983); Southern Christian Leadership v. Kelley, 747 F.2d 777, 779 (D.C.Cir.1984); contra Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos, S.A., 831 F.2d 59, 61-62 (5th Cir.1987) (district court's conclusions about Rule 24(a)(2) requirements other than timeliness are questions of law and reviewable de novo); Getty Oil Co. v. Dept. of Energy, 865 F.2d 270 (Em.App.1988) (adopting a "sensible blend" of standards of review).
 
 
 14
 In analyzing whether the Weisman intervenors meet these requirements, we will assume that their interests, such as they are, were not "adequately represented by existing parties." It is on the interest requirement of Rule 24(a) that the Weisman intervenors come up short. We interpret the district court's use of the term standing to implicate Rule 24's interest requirement.
 
 
 15
 Cases involving non-class members' attempts to intervene and/or object to settlements are few, and the courts usually reject the outsiders' attempts to enter the litigation during the settlement phase. See e.g., Kusner, 74 F.R.D. 606; Jones v. Amalgamated Warbasse Houses, Inc., 97 F.R.D. 355, 360 (E.D.N.Y.1982) aff'd 721 F.2d 881 (2nd Cir.1983), cert. denied, 466 U.S. 944, 104 S.Ct. 1929, 80 L.Ed.2d 474 (1984); Quad Graphics, Inc. v. Fass, 724 F.2d 1230 (7th Cir.1983). Weisman sought to intervene in Robinson under Rule 24(a)(2), and there is no indication that this rule is not applicable to class actions. Therefore, we reject the blanket proposition advanced by the appellees that the bondholders, solely by virtue of their non-inclusion in the Robinson class, have no standing as a matter of law to intervene to insure that their interests are protected. It is, rather, on the facts of this case upon which our decision rests.
 
 
 16
 The motion to intervene incorporated by reference the complaint in Gould (the three would-be intervenors were also among the six plaintiffs in Gould ). Reduced to its essence, the grounds asserted in support of the motion are these: (1) according to the terms of the debenture instrument, the intervenors, in their capacity as bondholders, have a superior interest in Alleco's assets to that of the Robinson plaintiffs; and (2) as Gould plaintiffs, they have potential judgment claims against Alleco, full payment of which would be impaired if the Robinson settlement is permitted to proceed. Thus, the motion concludes, "just allocation of the claims against Alleco, Inc. requires that the Intervenors be permitted time to demonstrate to this Court a just and effective process for handling priority of claims among those pursuing relief from Alleco, Inc."
 
 
 17
 The bond indenture does limit Alleco's right to declare dividends and to make distributions on capital stock under certain circumstances. What the appellants fail to appreciate is that the Robinson plaintiff class is not composed of stockholders qua stockholders; rather, these plaintiffs sued on the basis of alleged fraud related to their purchase of stock during a specific period in the past. The settlement fund represents damages, not stock distributions. The fact of prior stock ownership does not serve to bring the settlement within the indenture restrictions.
 
 
 18
 The Gould complaint sought damages and other relief for federal securities law violations and various state fraud violations. The gist of the argument is that payment of the $6.95 million settlement would deplete the assets of Alleco to the prejudice of the Gould plaintiffs in the event they were successful in their suit. Merely claiming a general interest in Alleco's assets based on a speculative recovery in an unrelated civil action does not, however, satisfy Rule 24's requirement that the claim be "relating to the property or transaction which is the subject of the action." If the intervenor's theory is correct, every proposed settlement would be subject to derailment as long as a potential judgment creditor decided to intervene. Kusner, 74 F.R.D. at 611. In a sense, every company's stockholders, bondholders, directors and employees have a stake in the outcome of any litigation involving the company, but this alone is insufficient to imbue them with the degree of "interest" required for Rule 24(a) intervention. On the facts presented by this record, we find that the lower court did not abuse its discretion by ruling that the intervenors had an insufficient interest for Rule 24(a) purposes.
 
 III.
 
 19
 The district court also determined that the intervention motion should be denied on the grounds that it was not timely filed. Both intervention of right and permissive intervention require "timely application." Fed.R.Civ.P. 24(a), (b). The Supreme Court has held that this timeliness requirement is determined by a court in the exercise of its discretion and that a ruling will not be disturbed on appeal unless this discretion is abused. NAACP v. New York, 413 U.S. 345, 365-66, 93 S.Ct. 2591, 2602-03, 37 L.Ed.2d 648 (1973). This Circuit has stressed the importance of timeliness and the wide discretion afforded the district courts. Brink v. DaLesio, 667 F.2d 420, 428 (4th Cir.1981). The Weisman motion is outside even the most indulgent standard of timeliness.
 
 
 20
 The courts are in general agreement regarding the considerations relevant to determinations of the timeliness of an intervention motion. A reviewing court should look at how far the suit has progressed, the prejudice which delay might cause other parties, and the reason for the tardiness in moving to intervene. Commonwealth of Pa. v. Rizzo, 530 F.2d 501, 506 (3rd Cir.1976), cert. denied, Fire Officers Union v. Pennsylvania, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976); Nevilles v. EEOC, 511 F.2d 303, 305 (8th Cir.1975). Each of these considerations militates against the motion. We will discuss each in turn.
 
 
 21
 The initial complaint in Robinson was filed on July 23, 1986, more than two years prior to the filing of the intervention motion. Two years of extensive litigation and settlement negotiations culminated in the settlement proposal presented to the court on May 17, 1988. Three and one-half months later, at the last possible moment, the intervention motion was filed. The tardiness of the motion is the strongest reason supporting its denial.
 
 
 22
 In United Airlines, Inc. v. McDonald, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977), the Supreme Court held that a putative class member's post-judgment motion to intervene, for the sole purpose of appealing the court's earlier denial of class certification, was timely because it was filed within the time permitted for appeal of the judgment. The Court emphasized that intervention prior to the entry of final judgment would have served no purpose whatsoever and would have tended to frustrate Rule 23's goal of judicial economy. Id. at 394 n. 15, 97 S.Ct. at 2470 n. 15. The Court also pointed out that, prior to the intervention request, the intervenor reasonably relied on the named class representatives to protect her interests. Id. at 394, 97 S.Ct. at 2469-70. Similarly, in Fleming v. Citizens for Albemarle, 577 F.2d 236 (4th Cir.1978), cert. denied 439 U.S. 1071, 99 S.Ct. 842, 59 L.Ed.2d 37 (1979), this Court's reversal, for abuse of discretion, of the lower court's denial of intervention was based on the dispatch with which the intervenor-applicants made their motion relative to the point at which it became clear that their interests were not being adequately represented by the existing defendants. Here, the intervenors cite United Airlines and Fleming for the proposition that even post-judgment intervention may be allowed. However, they do not contend that intervention at an earlier point would have served no purpose or that the tardiness of their motion was a result of prior reliance on one or more of the parties in Robinson. While last-second or even post-judgment intervention may be proper in some cases, the Weisman intervenors are unable to demonstrate that this is such a case.
 
 
 23
 The second component of the timeliness analysis, prejudice to the non-intervening parties, similarly works against the would-be intervenors. The intervention motion, if granted, would likely have required substantial additional litigation. In addition to the delay in the disbursal of the settlement funds which would have ensued had intervention been permitted, two provisions in the "Stipulation of Settlement" would have acted to prejudice the Robinson plaintiff class if the intervenors had been permitted to litigate. First, the settlement provided for the payment of attorneys' fees from the $6,950,000 settlement fund itself. Therefore, additional litigation would have acted to eat away at the plaintiffs' share of the fund as their legal fees rose. Secondly, the stipulation provided that interest on the fund would only accrue to the plaintiffs' benefit after the court had approved the settlement. The effect of intervention, then, and the resulting delay in court approval of the settlement would have acted to effectively reduce the value of the fund. Further delay, then, clearly would have prejudiced the plaintiff class.
 
 
 24
 The third consideration guiding the court's exercise of discretion is the reason for the tardiness of the motion. Weisman, admittedly the motivating force behind all of the various assaults on the settlement, alleged that his illness was the reason for the last-second filing. Weisman's health problems, however, did not interfere with his ability to file, as attorney of record as well as a plaintiff, the 102-page Gould complaint (plus 1,835 pages of exhibits) on August 15, 1988, and the 155-page "First Amended Complaint" on September 2, 1988. Moreover, the August 1 objection to the settlement was filed on his behalf by attorneys from a different law firm than his co-counsel in Gould. The fact that he is a lawyer himself, with at least two law firms retained by him for this and related litigation, belies his argument that illness alone should excuse his last-second filing. Thus, under all the circumstances of this case, we cannot say that the lower court abused its discretion in denying the motion to intervene as untimely filed.
 
 
 25
 For the foregoing reasons, we affirm the district court's denial of the motion to intervene on the alternative grounds of lack of sufficient interest (standing) as well as untimeliness. We further affirm the district court's ruling that Weisman lacked standing to object to the proposed Robinson settlement.
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 In the intervening period between the filing of the Robinson complaint and the Gould complaint. Allegheny Beverage Corporation changed its name to Alleco, Inc
 
 
 [2]
 Although the notice of appeal in 88-3637 states that the Gould plaintiffs were appealing from the lower court's "September 6, 1988, denial of a preliminary injunction and other relief with respect to the proposed settlement," the appellants' brief in this consolidated appeal does not address the lower court's actions regarding Gould. Thus, the lower court's denial of the relief requested in Gould, i.e., to enjoin the settlement or to appoint a receiver, is affirmed. We note that the complaint in Gould was subsequently dismissed on the ground that it violated Fed.R.Civ.P. 8(a) (short and plain statement)
 
 
 [3]
 Our ruling regarding the lack of standing of non-class members to object to proposed settlements should not be read to restrict the trial court's authority to consider or even solicit the views of non-parties to proposed class settlements