Richard O'REILLY and Jesse Griffith, Appellants,

v.

Sharon BRODIE, et al., Representing a Class of 8,875 Individuals, and Physicians Mutual Insurance Company, and Randall Boone, Appellees.

No. 04–98–00269–CV.

Court of Appeals of Texas, San Antonio.

April 22, 1998.

S. Mark Murray, Murray & Curl, Inc., San Antonio, John F. Reha, Arckey & Reha, L.L.C., Littleton, CO, F. James Donnelly, Dyer, Donnelly, P.C., Denver, CO, for Appellants.

Emerson Banack, Jr., Jeffers & Banack, Inc., San Antonio, Terrence O'Hare, J. Scott Paul, McGarth, North, Mullin & Kratz, Omaha, NE, Bob Gibbins, Geoffrey N. Courtney, Law Offices of Bob Gibbins, Austin, Russ Herman, Stephen J. Herman, Herman, Herman, Katz & Cotlar, New Orleans, LA, Richard Middleton, Peter C. Adams, Middleton, Mixson, Adams & Tate, Savannah, GA, Jim Kitchens, Margaret Ellis, Kitchens & Ellis, Pascagaula, MS, Howard Twiggs, Jay Trehy, Twiggs, Abrams, Strickland & Trehy, Raleigh, NC, Patricia Gibson, Maher, Gibson & Guiley, Orlando, FL, for Appellees.

Before STONE, GREEN and DUNCAN, JJ.

## OPINION

STONE, Justice.

Richard O'Reilly and Jesse Griffith are attempting to appeal from a judgment approving the settlement of a class action, and the trial court's order overruling their objections to the class settlement. Both plaintiffs and defendants challenge the standing of O'Reilly and Griffith to appeal the judgment through motions to dismiss the appeal for lack of jurisdiction. We dismiss the appeal for want of jurisdiction.

### FACTS

The underlying litigation arose out of plaintiffs' wrongful terminations from Physicians Mutual Ins. Co. ("PMIC"). Plaintiffs, former PMIC insurance agents and division managers, were employed by PMIC to sell insurance. Their contracts contained a "captive" clause which precluded these agents from soliciting applications for insurance on behalf of insurance companies other than PMIC. Plaintiffs were promised, among other things, that their association with PMIC would translate into financial gain and that they would receive management opportunities. Allegedly, the insurance products were discontinued or not made available for sale, and those products that were available for sale were not marketable. Promised bonuses and expense reimbursements also went unpaid.

Plaintiffs brought suit in 1994 seeking recovery on claims for breach of express or implied contract, breach of good faith owed to employees, violations of the Insurance Code, DTPA violations, unlawful restraint of trade, intentional and negligent misrepresentation, fraud, and wrongful termination. The case involved approximately 9,000 plaintiffs. Several years and thousands of dollars later, the parties reached a settlement agreement.

■ Pursuant to Texas Rule of Civil Procedure 42(e), plaintiffs motioned the trial court to conditionally certify the case as a class action for settlement purposes, to preliminarily approve the proposed settlement agreement, and to approve the manner of giving and content of notice to the proposed class. *See* TEX. R. CIV. P. 42(e) (class action may not be settled or compromised without court approval).[1] On December 11, 1997, the trial court preliminarily approved the settlement agreement, and the adequacy of the notice, scheduled a final fairness hearing for March 2, 1998, and set January 31, 1998, as both the deadline for the filing of objections by class members to the proposal and the deadline for the filing of a request for exclusion from class members choosing to opt out of the class.

It does not appear that any class members objected to the settlement. O'Reilly and Griffith filed objections to the class certification, with the nub of their complaint regarding their exclusion as class members. The class included all agents and division managers who contracted with Physicians Mutual on or after December 1, 1986 and whose contractual relationship terminated on or before October 31, 1997. Relevant to our proceeding, plaintiffs in lawsuits pending against Physicians Mutual in Colorado and Minnesota were excluded from the class. O'Reilly secured a judgment against PMIC in Colorado; Griffith contracted with PMIC on April 2, 1986. The trial court denied O'Reilly and Griffith's objections to the proposed settlement, finding they lacked standing to object because neither party would be bound by the terms of the settlement, and entered a final judgment approving the settlement. O'Reilly and Griffith's attempted appeal follows.

### DISCUSSION

■ No Texas court has addressed the discrete issue of whether a ***non-class member***, a "stranger" to the class action suit, has standing to appeal the judgment approving the settlement. Recently, the Fourteenth Court of Appeals confronted the question of whether an ***unnamed class member*** has standing to appeal the judgment approving the settlement, and looking to federal law for guidance, answered the question in the negative. *See San Juan 1990–A, L.P. v. Meridian Oil Inc.*, 951 S.W.2d 159 (Tex.App.— Houston [14th Dist.] 1997, pet. filed).

■ We begin with the general rule that only parties (named class members) to a class action have standing to object to a settlement. *See Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir.), *cert. denied*, 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1989).

---

1. Approval of class action settlements involves a three step process:

   1. Preliminary approval of the proposed settlement and plan of distribution of the settlement fund to class members at an informal hearing;
   2. Dissemination of notice of the settlement to all affected class members informing them of the proposed settlement and their right to participate in, object to or exclude themselves from the class proceeding; and
   3. A formal "fairness hearing" at which class members may be heard regarding the settlement and at which evidence and argument concerning the fairness, adequacy and reasonableness of the settlement is presented. Fred Misko, Jr., *Managing Complex Litigation: Class Actions & Mass Torts*, 13th ANNUAL ADVANCED PERSONAL INJURY LAW COURSE 20 (1997).

In determining whether to approve a proposed settlement, the trial court should consider the following factors: (1) whether the settlement was negotiated at arm's length or was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings, including the status of the discovery; (4) the factual and legal obstacles that could prevent the plaintiffs from prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinion of the participants, including class counsel, class representatives, and the absent class members. *General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 955 (Tex.1996). Once final approval is granted, the settlement becomes binding on all settlement class members and the claims of the class members against the defendants are released and dismissed. This procedure was followed in the instant case.

This general rule is consistent with the fundamental nature of a class suit as a representative procedural tool. 2 NEWBERG & CONTE, NEWBERG ON CLASS ACTIONS § 1.02 (3rd ed.1992). "Where the parties interested in the suit are numerous, their rights and liabilities are so subject to change and fluctuation by death or otherwise, that it would not be possible, without very great inconvenience, to make all of them parties, and would often time prevent the prosecution of the suit to a hearing, a portion of the parties in interest represent the entire body." *Id.* (quoting *Smith et al. v. Swormstedt et al.*, 16 How. 288, 302, 14 L.Ed. 942 (1853)). The named class members represent all who share a common interest but whose joinder is impracticable. *Id.* In order to achieve the goals of manageability and efficiency, only named class members are given standing in the suit. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 342–43 (N.D.Ga.1993); *see also San Juan 1990–A*, 951 S.W.2d at 163. If non-class members were allowed to object, the court would be forced to examine the effects of the proposed settlement on an individual whose rights are not affected by the terms of the settlement; such rule is contrary to the purpose of the notice requirement. *See Gould*, 883 F.2d at 284.[2] In furtherance of due process concerns, the notice and objection requirement allows those whose rights and privileges are affected by a class settlement the opportunity to be heard. It is axiomatic that only those whose rights and privileges are bound by the terms of the settlement have standing to object to the settlement, and by extension, have standing to appeal from the final order approving the settlement.

Here, in denying O'Reilly and Griffith's objections to the settlement, the trial court correctly determined that because their rights and privileges were not affected by the settlement, they had no standing to object to their exclusion from the class definition. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 342–43 (finding that non-class members lacked standing to object to settlement when not bound by it) (citing *Gould v.*

*Alleco, Inc.*, 883 F.2d at 284; *Mashburn v. National Healthcare, Inc.*, 684 F.Supp. 660, 673 (M.D.Ala.1988); *Liddell v. Missouri*, 731 F.2d 1294, 1315 (8th Cir.), *cert. denied*, 469 U.S. 816, 105 S.Ct. 82, 83 L.Ed.2d 30 (1984); *In re Warner Communications Sec. Litig.*, 618 F.Supp. 735, 754 (S.D.N.Y.1985), *aff'd*, 798 F.2d 35 (1986); *Seiffer v. Topsy's Int'l, Inc.*, 70 F.R.D. 622, 627–28 nn. 5–6 (D.Kan. 1976)). As noted by the court in *Domestic Air Transp. Antitrust Litigation*, the non-class members are not bound by the settlement or in any way prevented from asserting their own claims. 148 F.R.D. at 343. Indeed, in the case before us now, we know that O'Reilly successfully pursued his own claim against PMIC in Colorado. Moreover, allowing non-class members to object at the settlement stage would frustrate the goal of attaining settlements in complex multi-party litigation. *See Gould*, 883 F.2d at 284. Entertaining every objection from a non-class member would result in an examination of the effects of the settlement on the objector, increasing the cost of the proceeding, and delaying the benefits of settlement to both plaintiffs and defendants. *Id.; cf. San Juan 1990–A*, 951 S.W.2d at 164.

For similar reasons, O'Reilly and Griffith's attempted appeal should fail. As non-class members they are not parties to the suit, *see* TEX.R.APP. P. 25.1(b) (filing of notice of appeal by any party to underlying judgment or appealable order invokes appellate jurisdiction over all parties), and they are not bound by the terms of the settlement; hence, they have no standing. Accordingly, we dismiss the appeal for want of jurisdiction. Appellants' motion for extension of time to file a response to appellees' motions is denied. Appellees' motions to dismiss for want of jurisdiction are granted.

DUNCAN, J., concurs in judgment in part and dissents to judgment in part without opinion.

---

**2.** Unnamed class members can become parties in the suit by timely intervening. Intervention is proper if an intervenor shows he has an interest in the transaction, that disposition of the action would impair or impede his ability to protect that interest, and that his interest is not adequately represented by existing named parties. *Gould*, 883 F.2d at 284.