**UNITED STATES of America, Plaintiff,**

**v.**

**Commonwealth of VIRGINIA, Defendant.**

**Civil Action No. 3:12cv59–JAG.**

United States District Court,
E.D. Virginia,
Richmond Division.

May 9, 2012.

Robert P. McIntosh, United States Attorney's Office, Richmond, VA, Aaron Zisser, Alison Barkoff, Benjamin O. Tayloe, Jr., Vincent P. Herman, U.S. Department of Justice, Washington, DC, for Plaintiff.

Allyson Kurzmann Tysinger, Office of the Attorney General, Richmond, VA, for Defendant.

### MEMORANDUM ORDER

JOHN A. GIBNEY, JR., District Judge.

THIS MATTER is before the Court on the Motion to Intervene (Dk. No. 19) pursuant to Rule 24 of the Federal Rules of Civil Procedure[1] filed by PEGGY WOOD, by and through her father, Wriley Wood; BARBARA SUSAN FALLIS, by and through her father, Charles Fallis; TAMI LASSITER, by and through her father, Arnold Lassiter; TERESA KOURY, by and through her sister, Lorraine Koury; JONATHON SPEILBERG, by and through his father, Howard Spielberg; MARINDA LEWIS, by and through her father, Charles Lewis; ADAM SAMUEL BERTMAN, by and through his mother, Judith Korf; JASON KINZLER, by and through his mother, Jane Anthony; KEVIN PATRICK MORAN, by and through his mother, Mary Jane Moran; NEAL HAMPTON, by and through his Mother, Loretta Evans; SEAN JOHNSON by and through his mother Alice Johnson; KENT OLSEN, by and through his father, Kent Olsen, and AMBER ROBINSON, by and through her father, Wade Robinson, (hereinafter collectively referred to as the "Petitioners"). For the reasons stated herein, the motion will be granted. The Petitioners shall be added as defendants to this lawsuit.

On January 26, 2012, the plaintiff-United States of America filed its Complaint against the defendant-Commonwealth of Virginia (the "Commonwealth"), alleging violations of Title II of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12131–12134, through the unnecessary institutionalization of individuals with intellectual and developmental disabilities ("ID/DD") in Virginia. (Compl. ¶ 14.) The parties simultaneously filed a consent decree (Dk. No. 2–2, the "Agreement") which established a ten-year plan for the expansion of "the availability of existing community services to support individuals with ID/DD." (Joint Mot. for Entry of Agreement 3.) Among its provisions, the Agreement requires the Governor of Virginia to submit to the General Assembly a plan to close four of the state's residential "Training Centers." The Petitioners are all Training Center residents who wish to remain at their current facilities. In their motion, the Petitioners claim that the lawsuit affects their rights and interests such that intervention is required under Rule 24. *See* Fed.R.Civ.P. 24(a).

According to the Fourth Circuit, timely intervenors are entitled to interven-

---

1. Federal Rule of Civil Procedure 24 states, in relevant part:

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
(1) is given an unconditional right to intervene by a federal statute; or
(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
(b) Permissive Intervention.
(1) *In General.* On timely motion, the court may permit anyone to intervene who:
(A) is given a conditional right to intervene by a federal statute; or
(B) has a claim or defense that shares with the main action a common question of law or fact.
Fed.R.Civ.P. 24.

tion of right under Rule 24(a)(2) if they can demonstrate: (1) that they have an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation. *Teague v. Bakker*, 931 F.2d 259, 260–261 (4th Cir.N.C.1991) (citing *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir.1976)); *see also Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir.1989) (finding four requirements of Rule 24(a)(2): timeliness, interest, impairment of interest, and inadequate representation).

■ Here, the Motion to Intervene was filed in a timely manner. The United States filed its Complaint on January 26, 2012. The Petitioners filed their motion on March 2, 2012—before the initial pleading stage had finished. Where a case has not progressed beyond the initial pleading stage, a motion to intervene is timely. *See Scardelletti v. Debarr*, 265 F.3d 195, 203 (4th Cir.2001).

■ Furthermore, the Petitioners have a significant, protectable interest in receiving the appropriate care of their choice and protecting their rights under the ADA. *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 602, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999) ("Nor is there any federal requirement that community-based treatment be imposed on patients who do not desire it."). The operative document in the Court's analysis is the Complaint, not the Agreement.[2] Plainly, the Complaint contains a very broad request for relief that directly implicates the rights and interests of the Petitioners.[3] Judging the prayer for relief, nearly any request related to the care of Virginians with ID/DD can be fathomed—even a demand for a court order that closes the Training Centers altogether.

In other words, if the Court disapproves of the Agreement, all possible relief is on the table, and the Commonwealth has shown little interest in supporting a proposal that sustains the Training Centers.

The Petitioners are all Training Center residents who wish to continue receiving institutional care in their current settings. As such, their interests are certainly affected by a lawsuit alleging deficiencies in their care and a consent decree whose stated purpose is to prohibit the unnecessary institutionalization of Virginians with ID/DD. They are even members of the "Target Population" identified in the Agreement. (*See* Agreement III. B.1.a. ("The target population ... shall include individuals with ID/DD who ... are currently residing at any of the Training Centers;")). In short, the Petitioners have a federally protected right, under *Olmstead* and the ADA, to receive the appropriate care of their choice. That care is the central focus of the Complaint, thus the Court must permit the Petitioners to intervene in this matter.

Similarly, the relief requested in the Complaint represents a tangible threat to the Petitioners' right to receive the appropriate level of care. At this stage, the Petitioners are prohibited from fully expressing their objections and concerns with the Agreement. If the Agreement is rejected and the case proceeds forward, they would lack the voice to address the potential relief in the absence of a consent decree. Such an inability to defend satisfies the third requirement of Rule 24(a).

■ Finally, the existing parties in this litigation do not adequately represent the rights and interests of the Petitioners. The parties' desire to phase out the residential

---

**2.** Even assuming the Agreement is the operative document, the consent decree is designed to alter the types of care and housing arrangements for disabled Virginians in general. While it does not explicitly require the closing of the Training Centers, the Agreement may inevitably lead to that result. As such, it has a dramatic effect on the lives and basic rights of the Petitioners.

**3.** The Prayer for Relief states:
WHEREFORE, the United States of America prays that the Court:

44. Require Defendant to administer services for individuals with ID/DD in the most integrated settings appropriate to the needs of the individuals; and
45. Enjoin Defendant from administering services for individuals with ID/DD in a manner that unnecessarily isolates or segregates such individuals from the community; and
46. Order such other appropriate relief as the interests of justice require.
(Compl. ¶¶ 44–46.)

Training Centers and transition all Virginians with ID/DD to community-based care is readily apparent. The Petitioners have expressed a significant interest in receiving the appropriate level of care, which they argue, necessitates their continued placement at the Training Centers. Whether this litigation actually infringes their rights is not the question presently before the Court. Rather, the Court must determine whether the Complaint simply implicates the significant, yet unrepresented interests of a voiceless group who wishes to intervene. In this case, the Court finds such implication—Rule 24's requirements for intervention have been satisfied.[4]

Accordingly, the Court hereby ORDERS the following:

(1) The Petitioners' Motion to Intervene is GRANTED;

(2) The Petitioners' Motion to Dismiss (Dk. No. 19–1) filed as Exhibit A to the Motion to Intervene is DEEMED filed;

(3) The plaintiff and defendant are DIRECTED to respond to the Petitioners' Motion to Dismiss within ten (10) days from the entry of this Memorandum Order;

(4) A reply brief to each response from the plaintiff or defendant may be filed by the Petitioners, due no later than six (6) days from the filing of the respective response;

(5) As the Court will decide the Petitioners' Motion to Dismiss on the papers, a hearing is unnecessary; and

(6) All parties are DIRECTED to contact the undersigned's chambers within five (5) days of the entry of this Memorandum Order to set a hearing date for evaluation of the Agreement.

It is so ORDERED.

Let the Clerk send a copy of this Memorandum Order to all counsel of record.

---

4. In the alternative and at its discretion, the Court also finds that the requirements for permissive intervention under Fed.R.Civ.P. 24(b) have been satisfied. The Petitioners' protected right to the appropriate care for their disabilities implicates a claim that shares a common question of law with the instant suit. Moreover, the litigation will not be unduly delayed, nor will the existing parties be unduly prejudiced, by intervention in this case.