**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-2288**

MR. MICHAEL A. SCOTT, Intervenor/Plaintiff,

Potential Intervenor - Appellant,

v.

TIM BOND, on his own behalf and on behalf of all others similarly situated,

Plaintiff - Appellee,

and

CRICKET COMMUNICATIONS, LLC,

Defendant - Appellee,
and

AT&T INC,

Defendant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Marvin J. Garbis, Senior District Judge.  (1:15-cv-00923-MJG)

Argued:  March 20, 2018                           Decided:  May 17, 2018

Before DUNCAN, KEENAN, and THACKER, Circuit Judges.

Affirmed by unpublished opinion.  Judge Keenan wrote the opinion, in which Judge Duncan and Judge Thacker joined.

**ARGUED:** Martin Eugene Wolf, GORDON, WOLF & CARNEY, CHTD, Towson, Maryland, for Appellant.  Charles Alan Rothfeld, MAYER BROWN LLP, Washington, D.C.; Cory Lev Zajdel, Z LAW, LLC, Timonium, Maryland, for Appellees. **ON BRIEF:** Benjamin H. Carney, GORDON, WOLF & CARNEY, CHTD, Towson, Maryland, for Appellant.  Archis A. Parasharami, Matthew A. Waring, MAYER BROWN LLP, Washington, D.C., for Appellee Cricket Communications, LLC.

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

This appeal involves two parallel class actions alleging claims that arose from a merger between Cricket Communications, LLC (Cricket), and AT&T Inc. (AT&T). In early 2015, plaintiff Tim Bond filed the present class action in the district court alleging state-law claims against Cricket on behalf of a nationwide class.[1] In his complaint, Bond asserted that the merger rendered certain Cricket cellular phones obsolete. Later that year, intervenor Michael Scott filed a separate class action in Maryland state court arising from the same facts, alleging a single claim against Cricket under the federal Magnuson-Moss Warranty Act (the Warranty Act, or the Act), 15 U.S.C. §§ 2301–2312.

In February 2017, Bond and Cricket stipulated to amend Bond's complaint in the district court to add an essentially identical Warranty Act claim. Six months later, after the parties in the *Bond* case notified the district court that they had reached a proposed settlement, Scott moved to intervene in that case under Federal Rule of Civil Procedure 24. The district court denied Scott's motion as untimely, and Scott now appeals.[2]

We address the question whether the district court abused its discretion in denying Scott's motion to intervene, which was filed about six months after Scott knew or should have known that the Warranty Act claims in the *Bond* case replicated his own suit. We

---

[1] Bond filed his initial complaint against AT&T, but later substituted Cricket as the defendant.

[2] We have jurisdiction to consider Scott's appeal, because we treat the denial of a non-party's motion to intervene as an appealable final judgment. *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 207 (4th Cir. 2006).

3

conclude that the district court did not abuse its discretion, and we affirm the court's order denying Scott's motion.

## I.

Bond filed his class action complaint in the district court in March 2015, alleging that Cricket sold Code Division Multiple Access (CDMA) cellular phones after Cricket merged with AT&T in 2013. Claiming that Cricket should have known that the CDMA phones would lose functionality on AT&T's network after the merger, Bond alleged various Maryland state-law claims against Cricket, including breach of certain warranties. The district court referred those claims to arbitration in January 2016.

In September 2015, Scott filed his own putative class action in Maryland state court based on the same facts, seeking to represent only Maryland citizens and alleging only a single claim, namely, a violation of the Warranty Act. The Warranty Act permits a consumer under certain circumstances to bring a class action in state or federal court alleging a breach of state-law warranties. *See* 15 U.S.C. § 2310(d); *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 192 (4th Cir. 2017).

In October 2015, Cricket removed Scott's case from state court to the district court.[3] One month later, Cricket filed a Notice of Related Case in the *Scott* case, designating the *Bond* case as a related case on the *Scott* docket (the Notice). Cricket informed the district court in the Notice that the allegations in both cases "arise from the

---

[3] The two federal proceedings were assigned to different district court judges.

same events," namely, Cricket's alleged knowledge that the merger with AT&T eventually would render Cricket's CDMA phones obsolete. Cricket also stated in the Notice that Scott had alleged only a Maryland class, while Bond had alleged a nationwide class. Cricket set forth the relationship between the claims in the two cases as follows:

> The *Bond* complaint asserts a claim for breach of implied warranty, as well as other Maryland state-law claims. The *Scott* complaint asserts a single cause of action under the [ ] Warranty Act, and that claim in turn rests on allegations that Cricket breached express and implied warranties in violation of Maryland law.

In February 2017, the parties in the *Bond* case filed a joint stipulation to permit Bond to amend his complaint to add a Warranty Act claim (the second amended complaint). Shortly thereafter, in March 2017, the district court allowed Bond to file the second amended complaint. Both the *Scott* complaint and the second amended *Bond* complaint now contain allegations that the Warranty Act imposes civil liability on any "warrantor" for "failing to comply with any obligation under a written warranty and/or implied warranty." Both complaints also identify Cricket as a "warrantor" under the Warranty Act, and each action presently states a claim that Cricket's alleged breaches of certain express and implied warranties violated the Act.

On August 11, 2017, Cricket sent a letter to the district court in the *Bond* case notifying the court that the parties had reached a proposed settlement in that case, and stating that the settlement also would encompass the claims asserted in the *Scott* case.

5

However, Cricket's letter to the district court did not supply any other details regarding the terms of the proposed settlement.[4]

Two weeks after Cricket sent its letter to the district court concerning the proposed settlement, Scott moved to intervene in the *Bond* case under Federal Rule of Civil Procedure 24(a).[5]  In reviewing Scott's motion, the district court observed that "Scott could have, and should have, acted [to intervene] sooner."  The court found that Scott had known about Bond's case since November 2015, and that Scott "could have intervened in February 2017" when the parties in the *Bond* case filed the stipulation to add the Warranty Act claim, "but chose to pursue his own case in state court."  Accordingly, the court exercised its discretion to deny as untimely Scott's motion to intervene.  Scott now appeals from the district court's determination.

II.

On appeal, Scott argues that his motion to intervene under Rule 24(a) was timely, contending that a class member has no obligation to intervene before expiration of the period allowing class members to "opt out" of a proposed settlement.  Scott separately

---

[4] The parties ultimately disclosed the terms of the proposed settlement to the district court in November 2017.

[5] Scott's motion to intervene also invoked Rule 24(b), which, like Rule 24(a), requires timely intervention.  On appeal, however, Scott does not raise any argument regarding Rule 24(b).  Accordingly, we conclude that he has abandoned any challenge to the denial of his motion to intervene under Rule 24(b).  *See* Fed. R. App. P. 28(a)(8)(A) ("[An appellant's] argument . . . must contain . . . appellant's contentions and the reasons for them.").

maintains that he lacked notice that his interests were not protected by the parties in the *Bond* case until August 2017, when those parties filed their letter notifying the district court that they had reached a proposed settlement. We disagree with Scott's arguments.

We review for abuse of discretion a district court's determination denying as untimely a motion to intervene under Rule 24(a). *Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 365–66 (1973) [*NAACP*]; *Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989). District courts are accorded broad discretion in deciding the timeliness of a motion to intervene after assessing all the relevant circumstances. *See NAACP*, 413 U.S. at 366; *Gould*, 883 F.2d at 286. A district court abuses its discretion if its decision was guided by incorrect legal standards or rested upon a clearly erroneous factual finding. *Brown v. Nucor Corp.*, 576 F.3d 149, 161 (4th Cir. 2009).

Under Rule 24(a), a district court must permit an applicant to intervene in ongoing litigation if certain conditions are met. Such intervention as a matter of right is predicated on the filing of a timely motion, in which a non-party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Thus, to intervene as a matter of right under Rule 24(a), a movant generally must satisfy four criteria: (1) timeliness, (2) an interest in the litigation, (3) a risk that the interest will be impaired absent intervention, and (4) inadequate representation of the interest by the existing parties. *In re Brewer*, 863 F.3d 861, 872

7

(D.C. Cir. 2017); *Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001), *rev'd on other grounds sub nom. Devlin v. Scardelletti*, 536 U.S. 1, 6 (2002).

Timeliness is a central consideration when deciding a motion to intervene, and a movant's failure to seek intervention in a timely manner is sufficient to justify denial of such motion. *See Gould*, 883 F.2d at 286; *Scardelletti*, 265 F.3d at 202. A proposed intervenor should move to intervene as soon as it becomes clear that his interests "would no longer be protected by the named class representatives." *Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982). When assessing the timeliness of a motion to intervene, we consider (1) how far the case has progressed, (2) the prejudice to other parties caused by any tardiness in filing the motion, and (3) the reason for any tardiness. *Alt v. EPA*, 758 F.3d 588, 591 (4th Cir. 2014); *Gould*, 883 F.2d at 286. The most important consideration in reviewing a motion to intervene is whether the existing parties will suffer prejudice if the motion is granted. *Hill*, 672 F.2d at 386.

First, in relation to the stage of the proceedings, the timeliness requirement is intended to prevent an intervenor from "derailing a lawsuit within sight of the terminal." *Alt*, 758 F.3d at 591 (quoting *Scardelletti*, 265 F.3d at 202). Here, Scott sought to intervene in the *Bond* case in August 2017, shortly after Cricket and Bond filed their letter notifying the court that they had reached a proposed settlement. A settlement in principle raises a strong interest in finality. *See Gould*, 883 F.2d at 286–87 (holding that intervention motion, filed after settlement proposal was presented to court, was untimely); *see also Alt*, 758 F.3d at 591–92 (affirming determination that motion to intervene was untimely when settlement negotiations had occurred but no settlement had

8

been reached); *CE Design Ltd. v. King Supply Co.*, 791 F.3d 722, 726 (7th Cir. 2015) (affirming district court's untimeliness determination when settlement had been reached). And the district court reasonably found that Scott had known about Bond's lawsuit since the Notice was filed in November 2015, but had failed to intervene after being notified that the related action involved the same conduct by Cricket that was being challenged by a nationwide class. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (explaining that intervenor should have intervened when he received "notice of his interest in the instant action"). This lengthy delay and the fact of settlement supplied strong reasons for the district court to question the timeliness of Scott's motion.

Second, for similar reasons, a decision permitting Scott to intervene in August 2017 likely would have resulted in significant prejudice to Cricket and Bond. The delay caused by substantial additional litigation can demonstrate prejudice to existing parties. *See Gould*, 883 F.2d at 286–87. Moreover, intervention often is disfavored when it would disrupt a proposed settlement late in the litigation process, because such intervention may "threaten the delicate balance reached by existing parties after protracted negotiations." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 857 (9th Cir. 2016); *see also Scardelletti*, 265 F.3d at 204 (explaining that danger that settlement might "unravel[ ]" can show prejudice).

Notably, Scott does not dispute that his intervention in the *Bond* case would have resulted in prejudice to Cricket and Bond, at least by delaying the parties' efforts to have the district court approve the proposed settlement. As an intervenor under Rule 24(a), Scott could have pursued additional discovery and have opposed any motions in the *Bond*

9

case, including the motion for preliminary approval of the settlement that is now pending. *See Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 469 (4th Cir. 1992). His intervention therefore would have delayed that litigation substantially. If Scott had sought to intervene in February 2017, when the Warranty Act claim was added to the *Bond* case and he knew that his own Warranty Act claim was threatened, he could have avoided disrupting the parties' proposed settlement agreement. We therefore conclude that a strong likelihood of prejudice to Cricket and Bond supported the district court's decision to deny Scott's motion to intervene.

Third and finally, a movant seeking intervention must provide a plausible justification for a tardy motion to intervene. *Alt*, 758 F.3d at 591; *Gould*, 883 F.2d at 286. For example, a delay in filing might be justified if a person never received notice of a class action implicating his interests, *see Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877, 881 (7th Cir. 2000), or if there had been a substantial "change of circumstances" in the case, *Smith*, 830 F.3d at 854. However, if an intervenor was aware of a parallel case "from the outset" but "pursued a separate suit," the fact of a proposed settlement in the parallel case by itself is not a change of circumstances sufficient to justify tardy intervention. *See Scardelletti*, 265 F.3d at 203.

Here, Scott did not attempt to participate in any manner in the *Bond* case from the date Cricket filed the Notice in November 2015 until August 2017, when Scott sought to intervene in the proceedings. As of November 2015, Scott knew that the *Bond* case involved the very conduct by Cricket that Scott was challenging on behalf of a smaller class. Even assuming that Scott reasonably believed that his interests were not affected

10

by the *Bond* case when the Notice was filed in November 2015, he necessarily knew that the *Bond* case threatened his interests as soon as the parties in that case stipulated to add the Warranty Act claim in February 2017. And Scott himself stated in his brief filed in this Court that "the filing of [Bond's] second amended complaint [was] suspect." Thus, by his own admission, Scott had reason to intervene in February 2017 when the parties in the *Bond* case filed their stipulation, and yet he waited six months to do so. Moreover, Scott knew no more about the *Bond* case's purported threat to his rights in August 2017 than he knew in February 2017, because the settlement terms were not filed with the court until November 2017.[6] The district court therefore had compelling reasons to reject Scott's proffered justification for intervening long after he was aware of perceived threats to his interests. Accordingly, we conclude that the district court did not abuse its discretion in denying as untimely Scott's motion to intervene.[7]

Our conclusion is not altered by Scott's contention that we must presume the timeliness of a class member's motion to intervene, if the motion is filed before the deadline for class members to request exclusion from a class settlement. In a class action filed under Rule 23(b)(3), a settlement is binding on all class members, except for

---

[6] We also observe that because Rule 23 requires that a district court hold a hearing to consider whether a class action settlement is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2), Scott may raise concerns as a class member about the fairness of the settlement's terms at that hearing, or decide to "opt out" of the nationwide class.

[7] We do not reach Scott's arguments regarding the other prongs of the Rule 24 analysis, because his untimely request to intervene was a sufficient basis for the district court's exercise of discretion denying the motion. *See Gould*, 883 F.2d at 286; *Scardeletti*, 265 F.3d at 202.

11

members who request exclusion from the class before the expiration of the deadline set by the court (the opt-out deadline). *See* 3 William B. Rubenstein, *Newberg on Class Actions* § 9:38 (5th ed. 2017); *In re MI Windows & Doors, Inc., Prods. Liab. Litig.*, 860 F.3d 218, 223 (4th Cir. 2017). The Third Circuit has "recognized a [rebuttable] presumption of timeliness for intervention motions filed by purported class members," as long as such a motion is filed before the opt-out deadline.[8] *Wallach v. Eaton Corp.*, 837 F.3d 356, 372, 374 (3d Cir. 2016); *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314–15 (3d Cir. 2005) (reversing untimeliness ruling for class members who filed motion to intervene within two months of notice of settlement but before opt-out deadline). Fundamentally, this presumption promotes fair notice to absent class members, who are otherwise under "no duty to take note of the suit." *Wallach*, 837 F.3d at 373 (citation and internal quotation marks omitted).

We decline to apply such a presumption in this case. Concerns about fair notice apply to absent class members who otherwise have taken no action regarding the class claims, not to parties in a related proceeding. *See id.*; *D'Amato*, 236 F.3d at 84 (observing that intervention is not appropriate for one who has had "notice of his interest in the instant action" for some time); *Scardelletti*, 265 F.3d at 203 ("Although [the intervenor] argues that he was not aware of his interest in the settlement until the notice

---

[8] Contrary to Scott's argument, the Supreme Court's decision in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), is inapposite to our present inquiry. *American Pipe* announced a tolling rule that applies to ordinary class member intervenors after a district court ultimately has rejected certification of a proposed class. *See id.* at 542–44, 549–52.

12

of proposed settlement, [his] argument is belied by his participation in [parallel litigation.]"). In the present case, Scott was not a typical absent class member otherwise unaware of the proceedings in *Bond*. Instead, Scott filed his own competing class action six months after Bond filed his class action under Rule 23(b)(3), and Cricket identified Bond's case as a related case on the *Scott* docket in November 2015. Thereafter, Scott had notice of any developments in the *Bond* case, including the February 2017 stipulation adding the Warranty Act claim.[9] Accordingly, there are no concerns about fair notice here, and we do not apply the Third Circuit's presumption.[10]

## III.

For these reasons, we affirm the district court's denial of Scott's motion to intervene as untimely.

*AFFIRMED*

---

[9] We disagree with Scott's contention that our decision in *Hill v. Western Electric Co.*, 672 F.2d at 386, supports application of the presumption in this case. Our decision in *Hill* involved the question whether intervention was untimely when individuals failed to intervene while a petition for certiorari was pending, an issue not presented here. *Id.* Moreover, *Hill* did not recognize a presumption, but rather focused on the timeliness factors that we analyze above. *Id.* at 386–87.

[10] We express no view on the propriety of applying the Third Circuit's presumption in another case.