In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1868

JASON DOUGLAS,

*Plaintiff-Appellee*,

*v.*

THE WESTERN UNION COMPANY,

*Defendant-Appellee*,

*v.*

BETHANY C. PRICE,

*Objector-Appellant*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 1741 — **Gary Feinerman**, *Judge*.

ARGUED JANUARY 30, 2020 — DECIDED APRIL 13, 2020

Before BAUER, KANNE, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Appellant Bethany Price objected to a proposed class-action settlement, but the district judge ruled that she was not a class member and she did not contest that ruling. Price then sought attorney's fees and an

incentive award for objecting. The judge denied her requests because as a nonclass member, she had no standing to object or to receive fees or an award. Price appeals the denial of her fee and award requests, arguing that nonclass members can be compensated for objecting. Because Price does not challenge the ruling that she is not a class member, we conclude that she is not a party and lacks standing to appeal. Thus we dismiss the appeal for lack of appellate jurisdiction.

## I. Background

Price objected to the proposed settlement of a class action filed by Jason Douglas (the class representative) against The Western Union Company. The class complaint alleged that Western Union violated the Telephone Consumer Protection Act of 1934 by sending unsolicited text messages. The Act prohibits using any "automatic telephone dialing system" to make any call "to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii); *see Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."). A year into the suit, the parties agreed to settle for $8.5 million. The proposed settlement defined the class as: "All Persons in the United States who received one or more unsolicited text messages sent by or on behalf of Western Union between March 12, 2010 and November 10, 2015."

After the parties notified the class of the proposed settlement, four people objected, including Price. She thought she was a class member because she had received two text messages from Western Union. Price objected to the settlement on several grounds: it inadequately compensated the class; class counsel's fee request was too high; the plaintiff's

incentive award was too high; the class definition was imprecise because it did not include her; and the list of class members had errors.

The class representative and Western Union contested whether Price had standing to object. They argued that she could not be a class member because she had "filled out a form in which she expressly consented to receiving text messages for the exact purpose for which she received one." Western Union said that before sending text messages to customers, it generally obtained consent twice. Customers would consent when they first registered and again after an opt-in text message asked them to confirm that they wished to receive additional text messages.

During settlement negotiations, the parties agreed that two groups might have received "unsolicited" text messages: (1) those who entered transactions on Western Union's website but did *not* sign up for its loyalty program, and (2) those who transferred money via its website without consenting to receive text messages about their transfer and then received such a text. The parties maintained that Price did not fall into either class group because Western Union's records confirmed that she had enrolled in its loyalty program. To enroll, Price had to check a disclaimer box consenting to receive text messages and had to consent to the loyalty program's terms, which stated that by providing her cell-phone number to Western Union, she consented to receive text messages. Thus, Western Union concluded, the two text messages that Price received were not "unsolicited," so she was not a class member.

After the class representative moved for final approval of the settlement, the judge held a fairness hearing. Price

participated despite the ongoing dispute over her status as a class member. The judge questioned class counsel about whether the class was properly limited to the two customer groups, voiced concerns about counsel's billing records (some of which were also raised by Price), and requested more information about counsel's time records. Class counsel could not provide the information—he had no "detailed time records"—so time sheets were "reconstructed" from calendars, emails, and research records. Echoing the judge's concerns, Price continued to argue that the court should reject the settlement and reduce class counsel's fees.

With minor changes to the class definition, the judge certified the class, ruled that Price was not a member, approved the settlement, and reduced class counsel's fees. He amended the class definition to clarify that recipients of "unsolicited" text messages were in the class if they initiated transactions online but did not sign up for the loyalty program or initiated money transfers online without consenting to text messages about the transfer. Price, the judge explained, did not fall into either category. The judge also cut class counsel's requested fees from $2.8 million to $425,000, explaining that counsel's "reconstructed" timesheets lacked adequate support, were misleading, and reported "grossly excessive" hours. Price moved for reconsideration, asking the court to find that she was "a member of the Class as originally defined" and to redefine the class to include *all* customers who received text messages, even with consent. The judge denied the motion.

Price did not appeal her exclusion from the class and did not seek to intervene. Instead, she sought attorney's fees and an incentive award. The judge invited her to address

"whether a person who never fell within the class definition (original or modified) may move for fees and an incentive award under Rule 23." Price responded that no law barred her request, so she was entitled to fees and an incentive award for her success in reducing attorney's fees and improving the class definition. The motion was denied because Price had cited "no authority for the highly questionable proposition that a non-class member can recover fees and an incentive award under Rule 23." Price appealed. The parties then sought approval of a proposed settlement of her appeal under Rules 23(e)(5)(C) and 62.1 of the Federal Rules of Civil Procedure; the judge refused to approve it.

## II. Discussion

On appeal Price does not challenge the finding that she was not a class member. Instead, she contends that as a nonparty she may nonetheless seek fees and an award if she benefited the class. But her argument ignores a threshold question: whether a nonparty to proceedings in the district court has standing to appeal a decision that the nonparty does not like. The Supreme Court has held that "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988). A nonparty who is dissatisfied with a ruling in the district court must seek to intervene for purposes of appeal (and a denial of a request to intervene is itself appealable). *Id.* Price did not appeal the ruling that she was not a class member, and after the court ruled that she was a nonparty, she did not ask to intervene for purposes of appealing any unwelcome rulings. Accordingly, under *Marino* she lacks standing.

In *Devlin v. Scardelletti*, the Supreme Court clarified that it has never "restricted the right to appeal to *named* parties to the litigation." 536 U.S. 1, 7 (2002) (emphasis added). But *Devlin* does not undermine the application of *Marino* to this case. The *Devlin* appellant was an unnamed member of a class certified under Rule 23. As a class member, the appellant had standing to appeal from the district court. *Id.* at 6–7, 9. The Court emphasized that in class actions, unnamed class members may be parties for purposes of appeal when they have properly objected in the district court. *Id.* at 10. But here, Price acquiesced to the court's decision that she was *not* an unnamed class member. And under Rule 23(e)(5)(A) only a "class member" may object to a class settlement, so the rule does not create standing for nonclass members like Price. *See Mayfield v. Barr*, 985 F.2d 1090, 1092–93 (D.C. Cir. 1993); *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989).

At times we have allowed nonparties to appeal, but only when the district court has ordered them to do something (as with a contempt citation issued to nonparty witnesses) or when they are agents of parties to the suit (as with attorneys seeking fees). *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 287–88 (7th Cir. 2002). Those circumstances do not apply here. Citing *Reynolds*'s discussion of common funds in class actions, Price nonetheless argues that "[w]hen a lawyer lays claim to a portion of the kitty, he becomes a real party in interest." *Id.* at 288. But that situation is distinguishable from Price's because those attorneys represented named or unnamed class members, both of whom (unlike Price) would have standing in the district court. *See, e.g., In re Trans Union Corp. Privacy Litig.*, 664 F.3d 1081, 1083–84 (7th Cir. 2011) (concluding that the attorney who represented class members who filed individual claims could participate in the

appeal filed by class counsel where the appeal would directly impact that attorney's fees); *Reynolds*, 288 F.3d at 287.

Price insists that we must have appellate jurisdiction because her appeal is "taken from an order denying [her] motion for attorney's fees, making [her] an aggrieved party." But by acquiescing to the ruling that she was not a class member, she had no standing after that decision and could not be "aggrieved" by any of the later rulings. If Price thought she had a *legal* interest, she should have appealed the decision that she was not a class member or sought to intervene to become a party. *See Marino*, 484 U.S. at 304 (noting that if a nonparty "has an interest that is affected by" a district-court ruling, "the better practice is for such a nonparty to seek intervention for purposes of appeal," with denials of such motions being appealable); *see also Devlin*, 536 U.S. at 12–13 (opining that the possibility of an objector who is "not actually a member of the settlement class" is likely a rare situation and could be resolved "by a standing inquiry at the appellate level"). She did neither.

DISMISSED